UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACEY A MACALISTER,

                                        Plaintiff,

                - against -                                    **OPINION AND ORDER**

MILLENIUM HOTELS & RESORTS;                                    17 Civ. 6189 (ER)
M&C HOTELS, NYC; PAUL WONG,
PRESIDENT, NORTH AMERICA; HILARY
TOLMAN, VICE PRESIDENT, HUMAN
RESOURCES; and LAWRENCE LEE, SVP,
HUMAN RESOURCES,

                                        Defendants.

Ramos, D.J.

        Stacey MacAlister, proceeding pro se, brings this action alleging violations of the Age

Discrimination in Employment act of 1976 ("ADEA"), Title VII of the Civil Rights Act of 1964

("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human

Rights Law ("NYCHRL").  Specifically, MacAlister alleges discrimination based on age, sex,

race, nationality, and gender, hostile work environment under Title VII, and retaliation based on

her complaints to management about the alleged discrimination.  Defendants now move to

dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure.  For the reasons set forth below, the Defendants' motion is GRANTED.

## I.  BACKGROUND

### A.  Factual Background

        MacAlister is a white American woman over 40 years of age who was hired by

Millenium Hotels & Resorts – North America ("Millenium") on May 6, 2016, as the Corporate

Director of Sales.  Doc. 20, ¶ 1.  Four months later, on September 1, 2016, she received a promotion to lead the Global Sales Team of North America.  *Id.*, ¶ 4.  One of her supervisors was defendant Paul Wong, who was the president of Millenium.  *Id.*, ¶ 5.  Throughout her tenure, MacAlister also worked with defendants Hilary Tolman, vice president of Human Resources, and Lawrence Lee, senior vice president of Human Resources.  *Id.*, ¶¶ 6, 8, 10, 11, 12, 14, 27, 28, 30.

MacAlister alleges a series of incidents that negatively impacted her work and led to a demotion in her responsibilities.  First, she claims she was treated unfairly because on December 9, 2016, she was the only director on the corporate leadership team who was not given a renovated office, unlike each of the other leadership team members who were younger males of Asian/Indian descent.  *Id.*, ¶ 7.  Further, she alleges that she was placed in an office that was a converted closet.  *Id.*

On December 13, 2016, MacAlister was notified that she would be losing two of her administrative support staff despite the implementation of two new policies that increased her work responsibilities.  *Id.*, ¶ 8; Doc. 23-2 at 13.  She alleges that she had to oversee the largest team of any supervisor, and that many of her staff members were "highly challenged" due to the failure of past management to train them properly.[1]  Doc. 20, ¶ 8; Doc. 23-2 at 13.  On January 19, MacAlister received an e-mail from Tolman stating that she would no longer have responsibility for the North American Global Sales Team, referencing her inability to properly manage the team.  Doc. 23-2 at 11.

MacAlister also alleges Tolman falsely, publicly, and verbally accused her of disappearing for hours and, at one point, posted her job on LinkedIn as an available job

---

[1] Plaintiff specifically refers to seven out of her nine remaining support staff members.

opening.[2] Doc. 20, ¶¶ 10-11. She further claims that she was not invited to two corporate leadership meetings and she was not given the visiting schedule of one of the hotel's executives. *Id.*, ¶¶ 14, 19. Lastly, MacAlister alleges that her supervisor, Wong, allegedly tried to thwart her success by demanding to meet with her while she was in between meetings with two senior executive clients. *Id.*, ¶¶ 23, 25.

In response to these actions, on February 13, 2017, MacAlister informally reported her concerns by e-mail to Lee, senior vice president of Human Resources. *Id.*, ¶ 27. Lee allegedly assured her that a full and thorough investigation would be conducted, inclusive of Wong. *Id.*, ¶ 28. On February 17, MacAlister filed another report with Lee on behalf of one of her colleagues, who allegedly feared for her physical safety because Wong would repeatedly corner her in the hotel in a hostile, threatening manner to try and get her to lie about MacAlister. *Id.*, ¶¶ 29-30. Shortly after, on March 10, 2017, MacAlister was fired. *Id.*, ¶ 32.

## B. Procedural History

MacAlister filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 26, 2017. *Id.* at 6. The EEOC issued her a right-to-sue letter on May 15, 2017, *Id.*, and she timely filed the instant action on August 15, 2017. *Id.* at 1, 6.

The Complaint asserts six claims: (1) age discrimination in violation of the ADEA; (2) employment discrimination in violation of Title VII; (3) employment discrimination in violation of NYSHRL; (4) employment discrimination in violation of NYCHRL; (5) retaliation on the basis of Plaintiff's complaints; and (6) hostile work environment. *Id.* at 3-5.

---

[2] Plaintiff does not specify what the nature of the LinkedIn post was. She states that the "job posting" is on file; however, it is not in any of the exhibits. For the purposes of pleading, the Court will assume that the LinkedIn post was in fact a posting publicizing her job.

On December 4, 2017, prior to Defendants filing a motion to dismiss, Plaintiff sought leave to amend the Complaint to clarify that she was discriminated and retaliated against because of her gender, skin color, and age.  Doc. 19.  The Court granted this request and the Amended Complaint was docketed on January 5, 2018.  Doc. 20.  Defendants moved to dismiss the Complaint on February 22, 2018.  Doc. 24.

## II.  LEGAL STANDARD

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  "Courts are required to decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Spruill v. NYC Health & Hosp.*, 2007 WL 2456960, at *1 (S.D.N.Y. 2007), *aff'd sub nom. Spruill v. NYC Health & Hospitals Corp.*, 367 F. App'x 269 (2d Cir. 2010) (quoting *Magee v. Nassau County Med. Ctr.*, 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)) (internal citation marks omitted).

## A.  Motion to Dismiss Under Rule 12(b)(1)

A Rule 12(b)(1) motion seeks dismissal for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1).  "When considering a motion to dismiss for lack of subject[-]matter jurisdiction . . . , a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).  Nevertheless, "[t]he burden of proving jurisdiction is on the party asserting it." *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996) (internal quotation marks omitted).  In other words, for questions "involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos*, 140 F.3d at 131.  Accordingly, a court may consider affidavits and other material beyond the pleadings to resolve jurisdictional questions under Rule 12(b)(1).  *See Robinson v. Gov't of*

*Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001).

## B. Motion to Dismiss Under Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard under Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## C. Pro Se Plaintiff

Courts read pro se pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). The obligation to read a pro se litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting

*Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Age discrimination under the ADEA

Age Discrimination claims follow the *McDonnell Douglas* framework of analysis. *See McDonnell Douglas Corp. v.* Green, 411 U.S. 792 (1973); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014) (extending the framework to ADEA claims). Under this framework, the plaintiff bears the initial burden of proving a prima facie case of discrimination. *Id.* at 168. Afterwards, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the alleged actions. *Id.* Lastly, if the defendant satisfies its burden, the plaintiff has to prove that the proffered reason that the defendant gave has an underlying pretext of discrimination. *Id*.

"While the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer[ ], at the [pleading] stage – prior to the employer's coming forward with the claimed reason for its action – the plaintiff does not need *substantial* evidence of discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis added). The plaintiff just needs to make a showing "(1) that she is a member of a protected class, (2) that she was qualified for the position [in question], (3) that she suffered an adverse employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Id.* (emphasis added). Such a showing by the plaintiff "will raise a temporary presumption of discriminatory motivation, shifting the burden to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff." *Id.* at 307.

Here, MacAlister easily satisfies the first two factors. She is a member of a protected

class because she is over 40 years old.  *See* 29 U.S.C. §631 (2016).  She was also qualified for

the position.  To determine a plaintiff's qualifications, courts can consider a number of objective

factors, such as the years of experience, accomplishments, positive performance reviews, merit-

based systems, academic degrees, quality of the work, and interview scores.  *See Terry v.*

*Ashcroft*, 336 F.3d 128, 138-39 (2d Cir. 2003); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572,

580-82 (S.D.N.Y. 2008).  When it comes to hiring, courts have allowed employers to use their

subjective impressions to determine a prospective employee's qualification.  *See Byrnie v. Town*

*of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 104 (2d Cir. 2001).  While in the instant case,

MacAlister does not bring up any of these objective and subjective considerations, the fact that

she was hired as the corporate director of sales and promoted to head the global sales team

approximately four months later already speaks to the fact that she was qualified for the position.

Doc. 20, ¶¶ 1, 4.

Although it is a much closer call, MacAlister's allegations also support an inference of

adverse employment action at this juncture.  An adverse employment action is a materially

adverse change in the terms and conditions of employment.  *Mathirampuzha v. Potter*, 548 F.3d

70, 78 (2d Cir. 2008).  Such an action should be more disruptive than "a mere inconvenience or

an alteration of job responsibilities."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir.

2012) (quoting *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).  Adverse employment actions

are material only if they are "of such quality or quantity that a reasonable employee would find

the conditions of her employment altered for the worse."  *Albuja v. Nat'l Broad. Co. Universal*,

851 F. Supp. 2d 599, 606 (S.D.N.Y. 2012) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir.

1997)).  A plaintiff can show this by presenting an employment action that "effected the

deprivation of some tangible job benefits such as compensation, terms, conditions, or privileges

of employment." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). Courts have emphasized, however, that "there is no bright-line rule as to what constitutes a 'materially adverse change,' and courts must review the circumstances of each case to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination." *Durick v. N.Y. City Dep't of Educ.*, 202 F. Supp. 3d 277, 287 (E.D.N.Y. 2016).

Courts have typically considered an employment action as materially adverse in situations dealing with a "termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). The loss of support staff may also be materially adverse if it is connected with more favorable treatment towards other employees. *See Gibson v. Naugatuck Hous. Auth.*, 2007 WL 2572265, at *4 (D. Conn. 2007). Because there is no bright-line rule as indicated by the "other indices" language in *Feingold*, it is helpful to go through examples of employment actions that are not considered materially adverse.

Courts have generally held that "excessive scrutiny does not constitute adverse employment in the absence of other negative results, such as a decrease in pay or being placed on probation." *Honey v. Cnty. Of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002); *see also Stoddard v. Eastman Kodak Co.*, 309 Fed. App'x 475, 479 (2d Cir. 2009). Furthermore, while close monitoring can cause an employee embarrassment or anxiety, these are considered "intangible consequences that are not materially adverse." *Morrison v. Potter*, 363 F. Sup. 2d 586, 591 (S.D.N.Y. 2005). Being subjected to insulting language or unfair criticism in the presence of other employees does not constitute an adverse employment action without further indication of a "material impact on the terms and conditions of . . . employment." *See Smalls v.*

*Allstate Ins. Co.,* 396 F. Supp. 2d 364, 370-71 (S.D.N.Y. 2005) (quoting *Lee v. N.Y. State Dept. of Health*, 2001 WL 34031217, at *15 (S.D.N.Y. 2001)).

Similarly, exclusion from meetings, reprimands, or negative evaluations are typically not adverse. *See Watson v. Paulson*, 578 F. Supp. 2d 554, 565 (S.D.N.Y. 2008); *Trachtenberg v. Dep't of Educ. Of City of N.Y.*, 937 F. Supp. 2d 460, 469 (S.D.N.Y. 2013). Regarding physical office spaces, courts have held that "[t]he relocation of [an] office to a windowless, poorly ventilated room does not constitute an adverse employment action." *Trachtenberg*, 937 F. Supp. 2d at 467. Inadequate space and office supplies, and the loss of an office also do not constitute adverse employment actions without some corresponding loss of status or diminution of authority. *See Stoddard*, 309 Fed. App'x at 479; *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). In other words, while the loss of an office, alone, does not constitute an adverse employment action, the loss of an office accompanied by a loss of status, and a "clouding of responsibilities" can be materially adverse. *See Wanamaker*, 108 F.3d at 466 (citing *Collins v. State of Ill.*, 830 F.2d 692 (7th Cir. 1987)).

In the instant case, MacAlister alleges that she was not given one of the newly renovated offices; she was given, instead, an office that was a converted closet; she was falsely accused of disappearing for hours in front of her employees; her job was posted on LinkedIn; she was excluded from meetings with executive clients; and she was not notified of the visiting schedule of an executive employee. These facts do not indicate materially adverse employment actions because there is no indication that such actions were accompanied by a material loss of tangible job benefits such as decreased pay or probation. Moreover, during this time, MacAlister remained in her job as the director of sales in North America with no indication of a loss of status or compensation.

However, MacAlister further alleges that she lost two of her support staff and that she was demoted from being the head of the Global Sales Team. For the purposes of pleading, construing the facts in Plaintiff's favor, these employment actions are materially adverse. MacAlister does not indicate the specific tangible job benefits, conditions, and privileges she lost as a result of the demotion. However, at the very least, the demotion indicates a loss of title and materially diminished responsibilities, which, pursuant to *Feingold*, suffice as materially adverse employment actions. Regarding the loss of support staff, MacAlister does not provide additional facts indicating the number and loss of support staff, if any, of the other teams. Therefore, it is possible that the employment actions are not materially adverse when compared to her colleagues. However, construing the facts in her favor, the Court deems the loss of support staff materially adverse because, pursuant to *Albuja*, the loss of staff members can indicate to the reasonable employee that the conditions of her employment were altered for the worse.

Finally, the Court finds that MacAlister has not established a minimal inference of age discrimination. For age discrimination claims under the ADEA, the inference of discrimination only has to be a minimal inference that age was the "but for cause" of the adverse action. *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29 (2d Cir. 2016). The "but-for" standard of adverse employment is "not equivalent to a requirement that age was the employers only consideration, but rather that the adverse employment action would not have occurred without it." *Delaney*, 766 F.3d at 168-69 (2d Cir. 2014). In other words, "in determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989).

As mentioned above, the only adverse employment actions to consider are the plaintiff's loss of support and her loss of responsibility as the head of the Global Sales Team in North America. MacAlister has failed to establish a minimal but-for inference that these adverse actions occurred because of her age. She makes no indication that she was explicitly being singled-out because of her age. In fact, there is no indication that anyone mentioned anything about her age at all, nor is there any indication she was replaced in her role by a younger candidate. Regarding the loss of support staff, MacAlister does not give any additional information about the number or removal of support staff of any other team to show, for example, the favorable treatment of her younger colleagues. Therefore, no minimal inference of discriminatory intent regarding age can be drawn. As such, the Defendants' motion to dismiss the age discrimination claims under the ADEA is GRANTED.

**B. Discrimination under Title VII**

Title VII discrimination claims are also analyzed under the burden-shifting framework of the McDonnell Douglas Standard. *See Littlejohn,* 795 F.3d at 307. The plaintiff needs to make a showing "(1) that she is a member of a protected class, (2) that she was qualified for the position [in question], (3) that she suffered an adverse employment action, and (4) [that she] can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Id.* Here, MacAlister falls under a protected class due to her race, national origin, and gender as a white American woman. She was qualified for the position in question given that she was hired and promoted to be the head of global sales in North America. Additionally, MacAlister did suffer adverse employment actions when she lost her support staff and when she was demoted from her role as head of global sales shortly after.

To make an inference of discriminatory motivation under Title VII, "it is well settled that

. . . discriminatory intent may be derived from a variety of circumstances, including . . . 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group.'" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)) *superseded on other grounds.* In the instant case, without more information, MacAlister fails to draw a minimal inference that she was being discriminated against because of her protected status. She does not make any indication that the adverse employment actions are connected to criticisms or comments about her status as a (1) white (2) U.S. born (3) woman. Furthermore, she does not provide any information about any other employee, never mind any similarly situated employee, which does not allow this Court to draw an inference that there was favorable treatment of other employees outside of her protected status. While MacAlister alleges that she was the only one in her protected class who experienced these specific adverse employment actions, she does not allege facts to indicate that her colleagues' situations were left unchanged. Additionally, it is difficult to draw a minimal inference that she was being discriminated against in connection with her demotion as the head of global sales because she was the only one who served in that capacity and there is no allegation that she was replaced. Therefore, the Defendants' motion to dismiss the discrimination claims under Title VII is GRANTED.

## C. Hostile Work Environment under Title VII

Like the ADEA and Title VII claims, hostile work environment claims also analyzed under the *McDonnell Douglas* framework. *See Chick v. Co. of Suffolk*, 546 F. App'x 58 (2d Cir. 2013). The plaintiff has the burden of showing a prima facie claim by establishing "that [the] workplace was permeated with discriminatory intimidation that was sufficiently severe or

pervasive to alter the conditions of [the] work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Id.* at 59 (quoting *Schwann v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). This standard is a demanding one. *See Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584-85 (S.D.N.Y. 2008). However, while the standard is high, the Second Circuit has cautioned against "setting the bar too high." *See Feingold*, 366 F.3d at 150. "The test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Id.* at 150 (quoting *Terry*, 336 F.3d at 148). "The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.*

Courts ultimately consider the totality of the circumstances based on the following factors: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is threatening and humiliating, or a mere offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The incidents must be "repeated and continuous" rather than "isolated or occasional." *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992). However, a single incident may be enough if it is "extraordinarily severe." *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 402 (S.D.N.Y. 2012). Severity is measured by whether the workplace is "so severe as to alter the terms and conditions of the plaintiff's employment." *See Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014); *see also Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (holding that a hostile work environment exists where "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered."). Similar to adverse employment actions, being wrongly

excluded from meetings, being excessively criticized, gossip about the plaintiff, refusing training, reducing job responsibilities, and changes in the office space generally do not constitute hostile work environments. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (holding that a plaintiff who was excluded from meetings, criticized, and sent rude e-mails did not have a hostile work environment claim); *Nunez v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 2015 WL 46D5684, at *14 (S.D.N.Y. 2015) (holding that gossip about the plaintiff did not constitute a hostile work environment); *Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 2018 WL 3098881, at *3 (2d Cir. 2018) (holding that refusing training, reducing job responsibilities, and making someone sit outside her unit did not create a hostile work environment).

There is nothing in the instant case that would suggest that "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered." *Alfano*, 294 F.3d at 373. MacAlister's list of grievances, discussed above, do not, alone or in combination, create a hostile work environment because she does not allege any instances of ridicule or insult directed towards her protected status. Simply stating that she reported Wong's "harassment, hostility, discrimination and repeated entrapment attempts to Lawrence Lee" is conclusory. MacAlister further alleges that her colleague feared for her physical safety because Wong repeatedly cornered her in the hotel in a hostile, threatening manner to try and get her to lie about her. However, using the words "repeatedly," "hostile," and "threatening" does not make the allegation any less conclusory. MacAlister does not allege facts to specify the number of times Wong confronted her colleague, nor does she specify how Wong was being hostile and threatening. While this Court is required to accept as true all factual allegations in the complaint and to draw all

reasonable inferences in the plaintiff's favor, *Walker*, 717 F.3d at 124, this does not apply to "bare assertions[ ] or conclusory allegations." *Ashcroft*, 556 U.S. at 678. Therefore, the Defendants' motion to dismiss the hostile work environment claims is GRANTED.

## D. NYSHRL

NYSHRL claims regarding discrimination are analyzed identically to ADEA and Title VII claims. *See Marcus*, 661 F. App'x at 33, *Bermudez v. City of New York*, 783 F.Supp.2d 560, 576 (S.D.N.Y. 2011); *see also Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003).[3] While New York State uses a "notice pleading" standard, which is a lower standard than "plausibility," it has been "well established that a federal court sitting in diversity applies federal rules of procedure to a plaintiff's claims under both state and federal law." *Marcus*, 661 F. App'x at 31. As aforementioned, MacAlister fails to establish a but-for cause between her age and the adverse employment action in question. Furthermore, she fails to establish an inference of discrimination against her race, nationality, and gender. Therefore, the Defendants' motion to dismiss the discrimination claims under NYSHRL is GRANTED.

## E. NYCHRL

"Courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Under the NYCHRL, discrimination claims are construed liberally in favor of plaintiffs to the extent that such a construction is reasonably possible. *Albunio v. City of N.Y.*, 947 N.E.2d 135, 137 (2011). Therefore, "a complaint may fail to state a claim under Title VII and the NYSHRL but still be allowed to proceed under the NYCHRL." *Workneh v. Supper*

---

[3] Like ADEA and Title VII claims, NYSHL claims also follow the burden-shifting analysis of the McDonnell Douglas framework. *See Spiegel*, 604 F.3d at 80 (2d Cir. 2010) (citing *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005)).

*Shuttle Int'l. Inc.*, 2016 WL 5793744, at \*4 (S.D.N.Y. 2016).  Furthermore, unlike the federal statutes and the NYSHRL, "the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct."  *Mahalik*, 715 F.3d at 114.  A showing that "the plaintiff was treated less well because of a discriminatory intent" would suffice. *Workneh*, 2016 WL 5793744, at \*9 (quoting *LaSalle v. City of N.Y.*, 2015 WL 1442376, at \*2 (S.D.N.Y. 2015)).  However, despite this broader standard, the NYCHRL does not serve as a "general civility code."  *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015).  The plaintiff still bears the burden of showing that the conduct is caused by discriminatory motive because of the plaintiff's protected characteristic.[4]  *Workneh*, 2016 WL 5793744, at \*9 (quoting *Soloviev*, 104 F. Supp. 3d at 247).

For reasons already discussed, MacAlister does not allege any facts that indicate discriminatory intent on part of the Defendants.  While she alleges that she is the only one with her protective status who experienced the employment actions in question, she does not allege any additional facts distinguishing her experiences from that of her colleagues.  For example, while she may have lost two of her support staff, leaving her with nine, she does not specify the number of support staff her colleagues had and whether or not their teams were left untouched. Despite the broader standard of the NYCHRL, MacAlister still bears the burden of showing an inference of discrimination and this burden has not been met.  Therefore, the Defendants' motion to dismiss the discrimination claims under NYCHRL is GRANTED.

---

[4] Once the plaintiff has met this burden, "[i]t is unclear whether, and to what extent, the *McDonnell Douglas* burden shifting analysis [applies]."  *Mihalik*, 715 F.3d at 110 n. 8.  Nevertheless, the analysis in the instant case would not change at this juncture.

**F. Retaliation Claims**

Retaliation claims also follow a burden-shifting framework of the *McDonnell Douglas* standard. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (citing *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973)). For ADEA, Title VII, and NYSHRL claims, to make out a prima facie case of retaliation, the plaintiff must show: that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* at 125; *Malena*, 886 F. Supp. 2d at 361-62 (applying the federal standard to NYSHRL claims). Once this is established, "the burden of production shifts to the employer to demonstrate that a legal, nondiscriminatory reasons existed for its action." *Summa*, 708 F. 3d at 125 (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)). If the employer makes a non-discriminatory showing, "the burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

A "protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Opposition to employment discrimination "need not rise to the level of a formal complaint in order to receive statutory protection." *Id.* Informal protests of employment discrimination can suffice, which includes making "complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id.* The plaintiff need not prove the merit of the underlying discrimination complaint, but only that he or she was acting under a good faith, reasonable belief that a violation existed. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d

Cir. 1998).

While "complaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language, ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Fenner v. News Corp.*, 2013 WL 6244156121, at *24 (S.D.N.Y. 2013) (quoting *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F.Supp.2d 345, 357 (S.D.N.Y. 2007)). "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Asoilaire v. Wyeth Pharms., Inc.,* 612 F.Supp.2d 289, 308-09 (S.D.N.Y. 2009).

The plaintiff can establish proof of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Showing that the retaliatory actions "closely followed," the protected activity or that there was a "reasonably close temporal proximity" can suffice. *Summa*, 708 F.3d at 125. There is no bright-line rule to determine when too much time has passed and each case must be decided according to its unique context. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Here, MacAlister's February 13, 2017 e-mail to Lee qualifies as protected activity.[5] However, she fails to establish the second element of her retaliation claim. She mentions in her statement of facts that she has "reported . . . harassment, hostility, discrimination and repeated entrapment attempts to Lawrence Lee," however, the actual contents of her e-mail do not support

---

[5] While MacAlister also files a complaint with the EEOC, this occurred after her employment was already terminated, and therefore, falls outside the scope of this analysis.

these conclusory allegations. *See* Doc. 20, ¶ 27, Doc. 23-2 at 10-11. She does not allege in her e-mail that she was complaining of unfair treatment due to her protected class and not because of unfair treatment in general, nor does she allege that she was complaining of a hostile work environment. *See* Doc. 23-2 at 10-11. In fact, she even mentions that the reasoning behind her demotion from the head of global sales was her inferred inability to manage the team given the release of two of her support staff. *Id.* She does not mention any animus towards her protected class as a possible reason. *Id.*

For NYCHRL retaliation claims, "the plaintiff [only needs to] show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F. 3d at 112. Courts have broadly construed the NYCHRL retaliation provisions such that "opposing" an employer's discrimination can include situations where the plaintiff "merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment . . . was wrong." *Id.* (quoting *Albunio*, 947 N.E.2d at 137) (internal brackets omitted). Furthermore, when determining whether a retaliatory conduct would be reasonably likely to deter a person, the assessment should "be made with a keen sense of workplace realities, [and] of the fact that the 'chilling effect' of particular conduct is context-dependent." *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 34 (2009)).

In the instant case, while MacAlister informally reported her complaints to Lee via e-mail, the contents of the e-mail do not show that she was being discriminated against and that she disapproved of such discrimination. *See* Doc. 23-2 at 10-11. While Macalister was ultimately fired from her role, without a showing of discriminatory animus, this Court cannot infer that she was retaliated against on a basis prohibited by the statute. Therefore, the Defendants' motion to

dismiss Plaintiff's retaliation claims under the ADEA, Title VII, NYSHRL, and NYCHRL is
GRANTED.

## IV. LEAVE TO AMEND[6]

The Second Circuit has instructed courts not to dismiss a complaint "without granting
leave to amend at least once when a liberal reading of the complaint gives any indication that a
valid claim might be stated." *Shabazz v. Bezio*, 511 Fed. App'x 28, 31 (2d Cir. 2013) (quoting
*Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted).
Here, while the Court has already granted MacAlister the opportunity to amend her original
Complaint, it was not in the context of a motion to dismiss and the court has, therefore, not
provided guidance as to how his claims may be adequately made. The Second Circuit has
reaffirmed that the "liberal spirit" of the Federal Rules entails a "strong preference of resolving
disputes on the merits." *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
797 F.3d 160, 190-91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13
(2d Cir. 2011)). Courts should not dismiss claims with prejudice prior to "the benefit of a
ruling" that highlights "the precise defects" of those claims. *Id.* Therefore, MacAlister's
Amended Complaint is dismissed without prejudice.[7]

---

[6] Plaintiff is advised that she may seek advice from the legal clinic in this District to assist people who are parties in
civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal
Assistance Group; it is not part of, or run by, the Court (and therefore, among other things, cannot accept filings on
behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit). The
Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in
Room LL22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on weekdays from
10 a.m. to 4 p.m., except on days when the Court is closed. Plaintiff can make an appointment in person or by
calling 212-659-6190.

[7] MacAlister also alludes to religious discrimination as a Christian in her opposition to Defendants' motion to
dismiss. *See* Doc. 28 at 3. However, "[she] cannot amend [her] complaint by asserting new facts or theories for the
first time" in her opposition. *K.D. ex rel. Duncan v. White Plains School Dist.*, 2013 WL 440556, at *8 n. 8
(S.D.N.Y. 2013) (citing *Tomlins v. Vill. Of Wappinger Falls Zoning Bd. Of Appeals*, 812 F. Supp. 2d 357, 363 n. 9
(S.D.N.Y. 2011); *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd*, 445
Fed. App'x 389 (2d Cir. 2011)). However, she can assert such claims in her Amended Complaint.

## V. CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is GRANTED.

The plaintiff may file a Second Amended Complaint, if at all, by December 10, 2018.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated: November 8, 2018
New York, New York

Edgardo Ramos, U.S.D.J.
United States District Judge