UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STACEY A MACALISTER,

                           Plaintiff,

- against -

MILLENNIUM HOTELS & RESORTS;
M&C HOTELS, NYC; PAUL WONG,
PRESIDENT, NORTH AMERICA; HILARY
TOLMAN, VICE PRESIDENT, HUMAN
RESOURCES; and LAWRENCE LEE, SVP,
HUMAN RESOURCES,

                           Defendants.

**OPINION AND ORDER**

17 Civ. 6189 (ER)

---

Ramos, D.J.

      Before this Court is the Defendants' motion to dismiss MacAlister's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendants' motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

**A. Factual Background**

      The facts of this case are detailed in the Court's November 8, 2018 Order (the "November 2018 order") granting Defendants' motion to dismiss MacAlister's Amended Complaint without prejudice, familiarity with which is presumed. The Court here discusses only those facts necessary for the disposition of the instant motion.

      MacAlister is a white American woman over 40 years of age who was hired by Millennium Hotels & Resorts – North America ("Millennium") on May 6, 2016, as the Corporate Director of Sales, and was promoted four months later in September 2016 to lead the

Global Sales Team of North America by Shaun Treacy, then president of Millennium. Doc. 36 ¶ 1. MacAlister alleges the discrimination she endured began in approximately December of 2016, when Defendant Paul Wong, former General Manager of ONE UN,[1] replaced Treacy as president of Millennium. *Id.* ¶ 5.

On December 8, 2016, Hilary Tolman, vice president of Human Resources, sent an email confirming that Wong had a "hit list" of team members he targeted to fire.[2] *Id.* ¶ 6. The following day, while the other directors part of the corporate leadership team who were younger males of Asian/Indian descent were given renovated offices, MacAlister alleges that she was the only director not given a renovated office. Instead she was placed in an office that was a converted closet, which was segregated from the rest of the corporate leadership team. *Id.*

On December 13, 2016, MacAlister was notified that she would be losing two of her administrative support staff despite the implementation of new expense report policies that increased her work responsibilities. Doc. 36 ¶ 8. One week later, Tolman falsely accused MacAlister of "disappearing for hours" in public where other employees could hear, and allegedly posted MacAlister's position on LinkedIn.[3] *Id.* ¶¶ 10, 11. MacAlister reported Tolman's conduct to Lawrence Lee, senior vice president of Human Resources on December 27, 2016. *Id.* ¶ 12.

Following her report to Lee, MacAlister alleges that she was not invited to two corporate leadership meetings, and not provided the schedule of one of the company's executives who was

---

[1] MacAlister does not allege the details of the relationship between ONE UN and Defendants.

[2] It is not clear who is on the hit list or even if MacAlister is on the list, but it is alleged that employees targeted to be fired are on it.

[3] MacAlister does not specify what the nature of the LinkedIn post was. For the purposes of pleading, the Court will assume that the LinkedIn post was in fact a posting publicizing her job.

visiting her hotel. *Id.* ¶ 17. On January 11, 2017, MacAlister submitted a second report, this time to Colin Wang, vice president of operations at Millennium, on Wong's alleged "hit list" and inquiring why she was omitted from one of the leadership meetings. *Id.* ¶ 15. Two days later, MacAlister also reported Tolman's acts of "hostility, harassment, discrimination and failed entrapment attempts" to Wang. Moreover, MacAlister alleges Wong tried to thwart her success by demanding to meet with her while she was in between meetings with two senior executive clients on January 18, 2017. *Id.* ¶ 21. The following day on January 19, 2017, MacAlister received an e-mail from Tolman stating that she would no longer have responsibility for the North American Global Sales Team.[4] *Id.* ¶ 22.

In response to these actions, on February 13, 2017, MacAlister reported her concerns of "corporate coercion, harassment, hostility, discrimination and repeated entrapment attempts" by e-mail to Lee. *Id.* ¶ 26. Lee assured her that a formal investigation would be conducted, inclusive of Wong's five year history in New York and all lawsuit settled on his behalf.[5] *Id.* at ¶ 28. On February 16, 2017, MacAlister followed up with another report to Lee on behalf of Kathy Shiffler, director of sales and marketing at ONE UN, alleging that Wong would repeatedly corner Shiffler in the hotel in a threatening manner to try to get her to lie about MacAlister. Doc. 36. ¶¶ 29-30. Shortly thereafter, on March 10, 2017, MacAlister was fired. *Id.* ¶ 32.

In the November 2018 order, the Court dismissed MacAlister's Amended Complaint without prejudice, finding that MacAlister failed to show that the adverse employment action she suffered was motivated by discriminatory animus. She filed the Second Amended Complaint on January 10, 2019.

---

[4] MacAlister does not attach the email and does not allege what the company's grounds for altering her responsibilities were.

[5] MacAlister alleges no other details about the alleged investigation into Wong's conduct.

3

## II. Additional Facts Alleged in Second Amended Complaint & Opposition to Defendants' Motion to Dismiss

While in her previous complaints MacAlister only alleges no one else was treated as she was, in her Second Amended Complaint MacAlister alleges that she lost support staff, was demoted and eventually terminated because of her status as a (1) white (2) U.S. born (3) Christian (4) woman. Doc. 42. at 3-4. MacAlister previously alleged all corporate directors received renovated offices, however included in the Second Amended Complaint she alleges that even a recent hire, an Asian/Indian male under the age of forty, was also given a newly renovated office. Doc. 36. ¶ 7. In addition, MacAlister provides additional details about her January 18, 2017 meeting with Wong. MacAlister alleges Wong expressed his concern about MacAlister reporting his alleged "hit list" because "it is concerning for any publically held company." *Id.* at 21.

Millennium did conduct an investigation into Wong's conduct. During the investigation, Shiffler was interviewed and allegedly reported Wong's repeated attempts to force her to make false statements against MacAlister. *Id.* at 15 ¶ 28. Additionally, in MacAlister's Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, she alleges that Shiffler reported that during the month of December, Wong, while laughing, mocked MacAlister calling her "Treacy's old white bitch" that "he put in a closet."[6] Doc. 42. at 2-3. Shiffler also reported Wong calling MacAlister a "nasty old white bitch" twenty nine times just in the month of December. *Id.* On February 15, 2017, Shiffler emailed MacAlister documentation of her witness interview with Tanya Taylor, a lawyer for Defendants conducting the formal

---

[6] It is not clear when Shiffler informed MacAlister of these comments or whether she reported these statements to Taylor during Wong's investigation.

investigation into Wong's conduct.[7] *Id.* ¶ 28.

**B. Procedural History**

MacAlister filed a Complaint against Defendants on August 15, 2017 and later filed an Amended Complaint on January 5, 2018. On January 10, 2019 MacAlister filed her Second Amended Complaint. MacAlister's Second Amended Complaint alleges the same six claims asserted in her Amended Complaint: (1) age discrimination in violation of the ADEA; (2) employment discrimination in violation of Title VII; (3) employment discrimination in violation of NYSHRL; (4) employment discrimination in violation of NYCHRL; (5) retaliation on the basis of Plaintiff's complaints; and (6) hostile work environment. *Id.* at 3-5. Although MacAlister's Second Amended complaint largely mirrors her First Amended Complaint, the Second Amended Complaint includes facts about Shiffler's reports of Wong calling MacAlister a "nasty old white bitch." On February 25, 2019, Defendants filed their motion to dismiss the Second Amended Complaint.

**II. LEGAL STANDARD**

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). When ruling on a Rule 12(b)(6) motion to dismiss, district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy Rule 8 pleading standard, a complaint must contain sufficient factual matter to

---

[7] MacAlister does not allege any other details about Taylor or the formal investigation beside the fact that is was ordered by Lee.

5

state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts read *pro se* pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**III. DISCUSSION**

**A. Jurisdiction over claims brought by MacAlister**

To file any Title VII action, a plaintiff must file with the EEOC or authorized state agency naming the defendants. *Tappin v. Metro. Sub. Bus. Auth.*, No. 12 Civ. 2016 (JS) (AKT), 2014 WL 1330649, at *4 (S.D.N.Y. Mar. 31, 2014). Here, Defendants assert the Court lacks jurisdiction over MacAlister's claim because individual Defendants Tolman and Wong were not named in the "Right-to-Sue" letter issued by the EEPC to MacAlister and filed with the Amended Complaint. However, MacAlister alleges that all parties, including Wong and Tolman,

6

were named in her original EEOC complaint filed on April 26, 2017, a fact not plead in her previous complaints. MacAlister attached the EEOC cover sheet to the complaint to demonstrate the date of which the EEOC complaint was filed. Doc. 36 at 18. The "right to sue" letter is not before this Court and so the Court cannot conclude that Defendants are correct in asserting that Tolman and Wong were not named in the EEOC complaint. Viewing the fact most favorable to the plaintiff, MacAlister has pled sufficient facts to bring claims against all Defendants.

### B. *McDonnell Douglas* Framework

Age Discrimination, Title VII and hostile work environment claims follow the *McDonnell Douglas* framework of analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014) (extending the framework to ADEA claims). Under *McDonnell Douglas* framework, the plaintiff bears the initial burden of proving a prima facie case of discrimination. *Id.* at 168. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the alleged actions. *Id.* Lastly, if the defendant satisfies its burden, the plaintiff has to prove that the defendant's proffered reason has an underlying pretext of discrimination. *Id*.

"At the [pleading] stage – prior to the employer's coming forward with the claimed reason for its action – the plaintiff does not need *substantial* evidence of discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis added). The plaintiff need only make a showing "(1) that she is a member of a protected class, (2) that she was qualified for the position [in question], (3) that she suffered an adverse employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Id.* (emphasis added). Such a showing by the plaintiff "will raise a temporary

presumption of discriminatory motivation, shifting the burden to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff." *Id.* at 307.

This Court has already held that MacAlister satisfies the first three factors. She is a member of the class protected by the ADEA because she is over forty years old. *See* 29 U.S.C. §631 (2016). In addition, she is of the protected class under Title VII as a white woman. Likewise, it is undisputed that MacAlister was qualified for her position because she was hired as the corporate director of sales and promoted to head the global sales team approximately four months later. Ultimately MacAlister was terminated from her employment which is unquestionably materially adverse. *Feingold*, 366 F.3d at 152. In addition, the loss of some of her support staff and demotion from head of the Global Sales Team is considered materially adverse.[8] *See id.*

### C. *Minimal* Burden of Showing Fact to Infer Discriminatory Motivation

MacAlister's previously filed Amended Complaint failed because she did not allege sufficient facts to sustain a minimal burden to suggest an inference of discriminatory animus. In her previous Complaint, MacAlister merely claims to be the only one in her protected class serving as a corporate director, who experienced these specific adverse employment actions, while her colleagues' situations remained unchanged, but in her Second Amended Complaint she alleges she suffered adverse employment action because of her protected status. Still Defendants maintain that in her Second Amended Complaint, MacAlister's allegations are nothing more than trivial harms, petty slights that do not rise to the level of materially adverse employment actions.

However, MacAlister alleges that Wong made comments about her age, race and gender

---

[8] Here MacAlister alleges the loss of support staff was a tactical move to make it very difficult for her to meet her deadlines.

on numerous occasions by calling her "Treacy's" or "nasty" "old white bitch." In the month of December alone, MacAlister alleges Wong called her a "nasty old white bitch" twenty nine times. According to Shiffler, not only did Wong refer to MacAlister's age, race and gender in his name calling, Wong allegedly stated that he intentionally put her "in a closet," presumably, the converted closet that became her office. At the time, Wong was the acting president of Millennium and MacAlister's direct supervisor. *See Shao v. City University of New York*, 12 Civ. 1566 (RJS), 2014 WL 5038389, at *5 (S.D.N.Y. Sept. 30, 2014); *see also Dietrich v. City of New York*, No. 18 CV. 7544 (CM), 2019 WL 2236585, at *10 (S.D.N.Y. May 16, 2019) ("allegations that younger detectives were promoted instead of Plaintiff and that Plaintiff was subject to a discriminatory remark" were "sufficient to meet the (minimal) burden" establishing age discrimination for the purposes of a motion to dismiss").

Wong's remarks were made within a one month period, not during the span of a year or a couple of years. *See Haggood v. Rubin & Rothman*, 14 Civ. 34: (SJF) (AKT), 2014 WL 6473527, at *11 (E.D.N.Y. Nov. 17, 2017) (comments were made on four occasions over a thirty three month period prior to adverse employment action and so discriminatory intent could not be inferred). In addition, Wong's remarks that he intentionally moved her to a converted closet are so closely tied to her age, race and gender that discrimination can be inferred as the motivation for the move and other difficulties MacAlister faced. *See Raniola v. Bratton*, 243 F. 3d 610, 622 (2d Cir. 2001) (*citing Howley v. Town of Stratford*, 217 F. 3d 141 (2d Cir. 2000) ("prior derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by the same sex-bias manifested in earlier comments"). Despite the fact that solely being moved to a smaller office, or being precluded from certain meetings may not, by themselves, constitute adverse employment actions, MacAlister suffered these in

9

addition to actions that the Court has already found to be adverse, such as the loss of administrative staff. *See Dietrich*, 2019 WL 2236585, at *10.

Moreover, Wong's remarks and actions against MacAlister occurred during the same month, December. *See Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (finding that "the alleged remark about plaintiff's disability was neither made close in time to the decision nor in relation to the specific employment decision challenged" to infer disability-based discrimination, however regularly calling the plaintiff a "bitch" along with other facts is sufficient to infer gender-based discrimination); s*ee also Peralta v. Roros 940, Inc.*, 72 F. Supp. 3d 385, 395 (E.D.N.Y. 2014) ("alleged episodes of name calling heard secondhand could be indicative of discriminatory animus"). The Court finds the alleged name calling, in combination with the other slights MacAlister suffered, are sufficient to sustain the minimal burden of demonstration discriminatory animus based on age, gender and race. *See Raniola v. Bratton*, 243 F. 3d 610, 622 (2d Cir. 2001) (*citing Howley v. Town of Stratford*, 217 F. 3d 141 (2d Cir. 2000) ("prior derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by the same sex-bias manifested in earlier comments").

Regarding her hostile work environment claims, MacAlister alleges the loss of her administrative staff interfered with her ability to get her end of the year reports done. In addition she alleges that exclusions from meetings and name calling undermined her authority over her direct reports. Doc. 42, ¶11. This Court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor; and so at this juncture these unheard statements in conjunction with MacAlister's loss of support staff, demotion, alleged attempts of sabotage, relocation to converted office space and false allegations of disappearance

could objectively create "an environment that a reasonable person would find hostile or abusive." *Sardina v. United Parcel Service, Inc.*, 254 Fed. Appx. 108, 110 (2d Cir. 2007) (*quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *see Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citations omitted) ("just as a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment . . . the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment"); *see also Vazquez*, 2009 WL 2596490, at *15. Therefore, the Defendants' motion to dismiss MacAlister's claims of a hostile work environment, and age, gender and race based discrimination under ADEA and Title VII is DENIED.

### D. NYSHRL

NYSHRL claims regarding discrimination are analyzed identically to ADEA and Title VII claims. *See Marcus*, 661 F. App'x at 33, *Bermudez v. City of New York*, 783 F.Supp.2d 560, 576 (S.D.N.Y. 2011); *see also Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003).[9] As aforementioned, MacAlister has established an inference of discrimination because of her age, race and gender. Therefore, the Defendants' motion to dismiss the discrimination claims under NYSHRL is DENIED.

### E. NYCHRL

Under the NYCHRL, discrimination claims are construed liberally in favor of plaintiffs to the extent that such a construction is reasonably possible and independently from any federal and state law claims." *Albunio v. City of N.Y.*, 947 N.E.2d 135, 137 (2011); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "The NYCHRL does

---

[9] Like ADEA and Title VII claims, NYSHL claims also follow the burden-shifting analysis of the McDonnell Douglas framework. *See Spiegel*, 604 F.3d at 80 (2d Cir. 2010) (citing *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005)).

not require either materially adverse employment actions or severe and pervasive conduct," unlike the NYSHRL. *Id.* at 114. A showing that "the plaintiff was treated less well because of a discriminatory intent" would suffice. *Workneh*, 2016 WL 5793744, at *9 (quoting *LaSalle v. City of N.Y.*, 2015 WL 1442376, at *2 (S.D.N.Y. 2015)).

For the reasons set forth above, MacAlister has plead sufficient facts to lead to the conclusion that she was treated less well because of a discriminatory intent. Wong called her names directly referring to age, race and gender consistently prior to her demotion and termination. In addition, MacAlister alleges that no other employee suffered the loss of administrative staff or a demotion.

### F. Retaliation Claims

To make a prima facie case of retaliation under Title VII, a plaintiff must present enough evidence to allow a rational trier of fact to find "(1) that she engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (internal quotation marks omitted). If the plaintiff carries this burden, the defendant must "then point[ ] to evidence of a legitimate, nonretaliatory reason for the challenged employment decision." *Id.* If the defendant does identify a permissible justification of its action, the burden shifts back to the plaintiff and "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.*

A "protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Opposition to

employment discrimination "need not rise to the level of a formal complaint in order to receive statutory protection." *Id.* Informal protests of employment discrimination can suffice, which includes making "complaints to management." *Id.* The plaintiff need not prove the merit of the underlying discrimination complaint, but only that he or she was acting under a good faith, reasonable belief that a violation existed. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

The plaintiff can establish proof of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see Summa v. Hofstra Univer.*, 708 F.3d 115, 125 (2d Cir. 2013). .

In the previous order, the Court found MacAlister's February 13, 2017 email to Lee as protected activity, but she failed to establish the second element of retaliation because the contents of her email did not mention any animus towards her protected class as the possible reason for her demotion and release of support staff. However, in her Second Amended Complaint, MacAlister alleges that on January 11, 2017, she reported Wong's "hit list" to Wang and requested a follow up meeting to discuss why she was omitted from the meeting with one of the Millennium executives. While the details of the in person conversation have not been completely alleged, MacAlister alleged her concerns included being omitted from meeting with executives. About a week later, Wong scheduled a follow up meeting with her to discuss his specific concerns with her allegations that he created a "hit list," facts that were not alleged previously in her Complaints. During that meeting MacAlister directly informed Wong that she

did not appreciate his conduct which included posting her job on LinkedIn.  The following day, MacAlister was informed via email that she is no longer responsible for the North American global sales team which was later announced to the entire company in an email describing "US Sales Structure" on January 19, 2017.

Viewing the facts most favorably to MacAlister, the actions leading up to her February 13, 2017 report and after are enough to infer retaliatory conduct.  *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 469 (S.D.N.Y. 2017) (a plaintiff has engaged in a protected activity if he "personally complains or is critical about the discriminatory employment practices of [his] employer").  The reasonably close temporal proximity between MacAlister's reports of Wong's behavior, and her demotion, followed by her termination is enough to infer retaliatory conduct.  *See Summa,* 708 F. 3d at 125;  *see also Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10 Civ. 5612 (SJF) (AKT), 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012) ("a plaintiff may also demonstrate the causal connection by showing a "pattern of antagonism" over the intervening period").

For NYCHRL retaliation claims, "the plaintiff [only needs to] show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F. 3d at 112.  Courts have broadly construed the NYCHRL retaliation provisions such that "opposing" an employer's discrimination can include situations where the plaintiff "merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment . . . was wrong."  *Id.* (quoting *Albunio*, 947 N.E.2d at 137) (internal brackets omitted).  Furthermore, when determining whether a retaliatory conduct would be reasonably likely to deter a person, the assessment should "be made with a keen sense of

workplace realities, [and] of the fact that the 'chilling effect' of particular conduct is context-dependent." *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 34 (2009)).

Here, for the reasons set forth above, the Court finds that she has alleged sufficient facts to show retaliation under NYCHRL. Therefore, the Defendants' motion to dismiss Plaintiff's retaliation claims under ADEA, Title VII, NYSHRL, and NYCHRL is DENIED.

### G. Individual Defendants

Defendants assert that MacAlister has not demonstrated that individual defendants "participated in the conduct giving rise to a discrimination claim. Doc 23 at 12. However, MacAlister alleges Wong made direct comments about her race, age and gender that allow the inference he engaged in discriminatory conduct. *See Shao*, 2014 WL 5038389, at *10. Conversely, MacAlister does not allege any facts that allow an inference that Lee or Tolman engaged in discriminatory conduct. Tolman allegedly falsely accused MacAlister of leaving the office for hours, but she provides no facts indicative of discriminatory animus on the part of Tolman. Moreover, Macalister does not allege any facts that suggest that Tolman was responsible for her demotion or loss of support staff, she only alleges Tolman informed her of her loss of support staff. As regards Lee, MacAlister only alleges she reported Wong's conduct to Lee. She does not allege that he failed to investigate, was responsible for her termination, or engaged in any discriminatory actions. Thus, the Court GRANTS Defendants' motion to dismiss the complaint against Lee and Tolman, and DENIES the motion to dismiss Wong.

## V. CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is DENIED in part and GRANTED in part. The parties are directed to appear for a status conference on September 23, 2019, at 10:00 A.M.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 39.

It is SO ORDERED.

Dated: August 9, 2019
       New York, New York

                                            Edgardo Ramos, U.S.D.J.
                                            United States District Judge